Donald BRYAN, Appellant,

v.

STATE of Indiana, Appellee.

No. 1181S327.

Supreme Court of Indiana.

June 28, 1983.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Judge.

Appellant was charged with Murder. He was tried before a jury and found guilty. He was sentenced to a forty (40) year term of imprisonment.

The facts are as follows. The decedent in this case was appellant's ex-wife, one Virginia Bryan. Appellant and the decedent had been divorced since September, 1980. Mrs. Bryan lived in a trailer in Mishawaka with the two children born of that marriage, Jason and Colleen, and two of the decedent's children by a prior marriage, Patrick and Todd Miller. On the night of January 19, 1981, appellant came to the trailer to visit the decedent and the children, arriving a little after 10:00 P.M. Patrick and Todd had gone to a skating rink earlier in the evening and returned to the trailer around 11:00 P.M. They found their mother watching television and appellant asleep on the couch. Patrick and Todd went to bed shortly thereafter.

At around 2:00 A.M. on January 20, appellant's sister, one Helen Havens, who lived nearby, received a telephone call from appellant. He asked her if she would care for Jason and Colleen for a while. She agreed but immediately became suspicious, knowing appellant was not to have any custodial rights with regard to the children. Appellant brought Jason and Colleen to his sister's house a few minutes later. She then called police and asked them to check the trailer after she had tried to call and received no answer.

Shortly after appellant's sister called police, the LaPorte County Sheriff's office received a telephone call from appellant. He told the officer he knew where a dead body was located. He gave the telephone number of the truck stop from which he had placed his call. The sheriff's office called appellant back a few minutes later to get more information on where the body was located. Appellant told the officer he thought he had killed his wife and gave him the address of the trailer.

Officers from the sheriff's department went to the trailer. They found the body of the decedent in her bed, dressed in nightclothes, with the covers pulled up as if she were asleep. At that time Patrick and Todd emerged from their room, having slept through the entire incident. In the meantime an officer was dispatched to the truck stop. Appellant was arrested when this officer learned a dead body had been found at the trailer. An autopsy performed the next day on the victim showed she had died as a result of strangulation.

At the trial appellant took the witness stand in his own defense. He stated that after all the children were in bed that night, his ex-wife told him she planned to take the children and move out of the State and that he would never see them again. He stated this news upset him greatly. He further testified that during the ensuing argument she grabbed a baseball bat from the corner of the room and threatened to "knock [his] brains out." He stated he managed to grab the bat away from her

and that he "lost [his] mind" and proceeded to strangle her with a piece of wire he had in his pocket. He stated he didn't intend to kill her and that when he left the trailer he wasn't even sure if she was dead.

Appellant asserts the trial court erred in partially denying his oral Motion in Limine addressed to the admission of certain evidence, and also erred in subsequently admitting the evidence at the trial. In his motion appellant alleged the State would call several of his wife's children by a former marriage as witnesses, and that these witnesses would testify about incidents in which he physically attacked or abused these children at times when they all lived together. Appellant argues that evidence of his prior "bad acts" tending to show his violent nature should have been excluded as evidence.

The State's response was that these witnesses would be called to testify about appellant's numerous prior physical attacks on the decedent. The State contended the children's testimony would show some of appellant's attacks on the decedent were the result of his acts of violence committed against the children, that upon his severe physical discipline of the children the decedent would intervene on their behalf and appellant would then assault her in response. The State postulates that since the evidence of appellant's assaults upon the children were inextricably tied to the evidence of his assaults upon the decedent, the admission of the former was necessary to complete the description of the latter. Appellant's counter response is that he has an absolute right to exclude the evidence of his prior assaults on the children, and that the State should not be allowed to use a "bootstrap argument" to place this evidence before the jury on the theory it is part of the *res gestae* of the incidents of assault upon the decedent. The trial court agreed with the State and ruled accordingly on appellant's Motion in Limine and also permitted the evidence of the assaults on the children to be admitted.

In West's Indiana Law Encyclopedia, Vol. 8, § 302, Criminal Law, it is stated: "Evidence which is otherwise competent or relevant and which tends to establish the defendant's guilt of the crime charged is not excluded merely because it proves or tends to prove him guilty of another and distinct crime, especially where the two crimes are connected." *See also, Zimmerman v. State,* (1921) 190 Ind. 537, 130 N.E. 235. In the case at bar the evidence was that appellant directed a violent attack on his wife each time she tried to intervene when he was abusing the children. Evidence of prior assaults by the accused on the victim of a homicide is admissible as evidence of the intent to kill. *Harris v. State,* (1981) Ind., 425 N.E.2d 112; *Moore v. State,* (1981) Ind., 414 N.E.2d 558; *Martin v. State,* (1978) 267 Ind. 583, 372 N.E.2d 181. This evidence of prior attacks on the decedent was not rendered inadmissible merely because it also tended to show other crimes of attacks on the children.

There was no error on the part of the trial court in admitting this evidence.

Appellant claims the trial court erred in finding Jason Bryan, appellant's son, competent to testify over his objection. Appellant asserts the trial court erred in its ruling on the grounds it was shown he was so extensively "coached" by the prosecutor's office prior to trial that his answers could not possibly have been truthful.

I.C. § 34-1-14-5 [Burns 1973] provides in relevant part:

"The following persons shall not be competent witnesses:

\* \* \* \* \* \*

"Second. Children under ten [10] years of age, unless it appears they understand the nature and obligation of an oath."

The record shows Jason Bryan was one month away from his ninth birthday. In construing this statute, this Court has held a witness under ten years of age may be found competent if, upon questioning by the trial court, it appears the witness knows the difference between telling the truth and telling a lie, and the child realizes he is under some compulsion to tell the truth. *Buttram v. State,* (1978) 269 Ind. 598, 382

N.E.2d 166; *Johnson v. State,* (1977) 265 Ind. 689, 359 N.E.2d 525. The determination made is subject to review only for abuse of discretion. *Id.*

We find no abuse of discretion in the case at bar. Jason Bryan's answers to the questions propounded to him indicate he understood both the difference between lying and telling the truth and that during this proceeding he was compelled to be truthful. *See Lewis v. State,* (1976) 264 Ind. 288, 342 N.E.2d 859. Moreover, a witness is not incompetent because of a showing his testimony may have been influenced by others. *Hill v. State,* (1977) 267 Ind. 411, 370 N.E.2d 889. The fact of a witness having been subjected to the influence of others regarding his testimony is a matter for the jury to consider in weighing his testimony. *Id.* In the case at bar the jury became aware of Jason's having "played court" with representatives of the police department and the prosecutor's office prior to trial. Thus the jury was entitled to use this knowledge to evaluate Jason's credibility, but it does not serve to render him incompetent as a witness. We find no error here.

Appellant argues the trial court erred in permitting State's witness Rosa Perkins to testify over his objection. Perkins stated that during June and July of 1980 she was a counselor at the Woman's Shelter, a shelter for battered and abused women. She testified that for about thirty days during those months the decedent stayed at the shelter. Appellant contends that since this was the sum total of her testimony, its inflammatory and prejudicial effect of portraying him as an abuser of women outweighed its value so as to make it irrelevant.

We disagree. Relevant evidence is not inadmissible merely because it is prejudicial. *Meredith v. State,* (1966) 247 Ind. 233, 214 N.E.2d 385. The basic test of relevancy is whether the evidence tends to prove the existence of a material fact in the case, or make a desired inference more probable, even if that tendency is only slight. *Candler v. State,* (1977) 266 Ind. 440, 363 N.E.2d 1233; *Pirtle v. State,* (1975)

263 Ind. 16, 323 N.E.2d 634. In a prosecution for murder the accused's intent is certainly an issue of material fact. *See Palmer v. State,* (1981) Ind., 425 N.E.2d 640; I.C. § 35–42–1–1 [Burns 1979 Repl.]. As we have already stated, evidence of the accused's intent to kill the victim of a homicide is admissible in the form of evidence of his prior assaults on that victim. *Harris, supra; Moore, supra; Martin, supra.* Perkins' testimony, coupled with that of another witness that the decedent filed for a divorce from appellant during the time that she was at the shelter, permitted the inference that appellant committed physical assaults upon her, as proof of his intent to kill. This testimony by Perkins was not only relevant, it was also no more damaging than any other form of testimony showing appellant had perpetrated physical assaults upon the victim prior to the homicide. We find no error here.

Appellant claims the trial court erred in admitting State's Exhibit 20 into evidence. This exhibit was a tape recording of the two telephone conversations appellant had with the LaPorte County Sheriff's office referred to earlier. The record shows this tape was a re-recording of the original tape. The trial court denied appellant's Motion to Suppress the tape as evidence and then at trial admitted the tape over appellant's proper objection. Appellant's objection to its admission is that it fails to meet the foundational requirements for admission of a tape recording into evidence set forth in *Lamar v. State,* (1972) 258 Ind. 504, 282 N.E.2d 795.

In *Lamar, supra,* at 513, 282 N.E.2d at 800, we laid out the following five foundational requirements for admission of a tape recording into evidence:

"(1) That it is authentic and correct;

(2) That the testimony elicited was freely and voluntarily made, without any kind of duress;

(3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

(4) That it does not contain matter otherwise not admissible into evidence;

(5) That it is of such clarity as to be intelligible and enlightening to the jury."

In the case at bar appellant claims foundational requirements (2), (3), and (5) are not met.

As to the fifth requirement of clarity, we find the tape meets this test. There is some background noise present, but the voices and utterances of appellant and the officer with whom he spoke are quite distinguishable.

As to requirements (2) and (3), it is clear these apply only when the tape recording is of a statement by the accused made during a custodial interrogation such that the requirements of *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and its progeny apply to the admission of the statement itself. *See Winningham v. State,* (1982) Ind., 432 N.E.2d 24. Here, as in the *Winningham* case, the taped conversation was not in any sense a part of a custodial interrogation, and thus no warnings were required.

█ In a related claim appellant claims the trial court erred in permitting the jury to read a typewritten transcript of the substance of the recorded conversation while they listened to the tape.

In *United States v. McMillan* (8th Cir. 1974), 508 F.2d 101, the Eighth Circuit set forth the standards for use of transcripts of tape recordings in situations like the one in the case at bar. Our Court of Appeals adopted these standards as the law in Indiana in *Duncanson v. State,* (1979) Ind.App., 391 N.E.2d 1157. We quote from the *McMillan* case:

"The best evidence of the conversation is the tape itself; the transcript should normally be used only after the defendant has had an opportunity to verify its accuracy and then only to assist the jury as it listens to the tape. If accuracy remains an issue, a foundation may first be laid by having the person who prepared the transcripts testify he has listened to the recordings and accurately transcribed their contents. *Cf. Fountain v. United States,* 384 F.2d 624, 632 (5th Cir.1967), *cert. denied,* 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968). Because the need for transcripts is generally caused by two circumstances, inaudibility of portions of the tape under the circumstances under which it will be replayed or the need to identify the speakers, *see United States v. Bryant,* 480 F.2d 785, 790–791 (2d Cir. 1973); *Fountain v. United States, supra,* 384 F.2d at 632; *United States v. Hall,* 342 F.2d 849, 853 (4th Cir.), *cert. denied,* 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965), it may be appropriate, in the sound discretion of the trial judge, to furnish the jurors with copies of a transcript to assist them in listening to the tapes. In the ordinary case this will not be prejudicially cumulative. *United States v. Fountain, supra,* 384 F.2d at 632. Transcripts should ordinarily not be read to the jury or given independent weight. The trial judge should carefully instruct the jury that differences in meaning may be caused by such factors as the inflection in a speaker's voice or inaccuracies in the transcript and that they should, therefore, rely on what they hear rather than on what they read when there is a difference. Transcripts should ordinarily not be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence. *See generally* 17 Am.Jur.2d P.O.F. *Tape Recordings as Evidence* §§ 54–56 (1966)." *McMillan, supra,* at 105.

Appellant contends since the tape is audible and the speakers identified, the jury should not have been allowed to read a transcript at all. Moreover, appellant contends even if it is found that a transcript was necessary for one of the two reasons, the court erred in failing to establish the accuracy of the transcript by having one who both listened to the tapes and prepared the transcript verify that the transcript is an accurate recital of the recorded conversation.

Appellant is correct in his assertion that the trial court did not verify the transcript

for accuracy in the manner described above. However, contrary to the State's assertion, we find appellant did make it clear he disputed the accuracy of the transcript. At the same time, however, neither at trial nor on appeal has he identified the typed statements in the transcript that are not identical with the conversation.

We find appellant has failed to demonstrate the kind of prejudice that would enable him to gain a reversal on this issue. To constitute reversible error there must be prejudice to the defendant. *Murray v. State,* (1982) Ind., 442 N.E.2d 1012; *Smith v. State,* (1982) Ind., 432 N.E.2d 1363.

We also observe the federal circuits have indicated a key requirement with regard to the *McMillan* procedure is that the trial judge should, whenever allowing a jury to simultaneously listen to a tape and read a transcript, tell the jury that whenever they are in doubt as to the accuracy of the transcript they should ignore it and rely only on what they hear insofar as the actual content of the conversation is concerned. *See United States v. Hassell* (8th Cir.1977), 547 F.2d 1048; *United States v. Bryant, supra.* The record shows the trial judge gave this admonition to the jury.

▪ Appellant also claims the trial court erred when it stated to the jury that the transcript was "not in evidence." Appellant asserts that there is no logic to the position that a document given to the jury to read and consider can somehow not have been "admitted into evidence." The record shows this statement by the trial judge was made in connection with his admonition that the transcript itself was not an exhibit and that the evidence of what was said during the telephone conversations was what was heard on the tapes. Thus the judge was technically correct in stating the transcript was not "in evidence," and likewise appellant's assertion that the jury was allowed to "consider" the transcript as evidence is incorrect, as they were specifically admonished not to do so. It is to be noted that consistent with this admonition the jury was not allowed to take the transcript into the jury room with them during delib-

erations. *See, e.g., Jackson v. State,* (1980) Ind., 411 N.E.2d 609. In this situation where a transcript is used merely to assist in following a simultaneously played tape recording, this is a proper procedure.

▪ Appellant claims the trial court erred in unfairly limiting his right of cross-examination and his right to put on his own evidence by not permitting him to adduce evidence of the decedent's violent behavior toward him. Appellant points out though evidence of the character of the deceased and his propensity for violence is ordinarily not admissible in a prosecution for murder, it is an issue when the defendant raises the claim of self-defense. *Begley v. State,* (1981) Ind., 416 N.E.2d 824; *Teague v. State,* (1978) 269 Ind. 103, 379 N.E.2d 418. He asserts, "[T]he prosecution steadfastly attempted at every turn to prevent any evidence from being presented either through cross-examination of its witnesses or through independent direct testimony in the Defendant's case of any aggression on the decedent's part towards appellant and the children."

However, appellant fails to cite us to any part of the record where he was not allowed to ask either the State's or his own witnesses about alleged acts of violence of the decedent toward him. Failure to do so under Rule 8.3(A)(7) is a waiver of the issue. *Akins v. State,* (1981) Ind., 429 N.E.2d 232. Moreover, though we are not required to review the record ourselves in search of a basis for a claim of error, *Akins, supra,* we have done so and are unable to find a single instance in which the trial court prohibited appellant from asking either the State's witnesses or his own about the decedent's alleged prior assaults upon him or the children.

▪ Appellant claims the trial court erred in denying his Motion for a Mistrial. This motion was made when the following exchange occurred during cross-examination of appellant:

"[Prosecutor]: I believe that on direct examination you said you felt guilty; is that correct?

[Appellant]: Yes, sir.

[Prosecutor]: Do you feel guilty today?

[Appellant]: Yes, sir.

[Prosecutor]: Is that because you are guilty?"

At that point defense counsel made the motion, which was denied. Out of the hearing of the jury the prosecutor was admonished not to ask such a question again. Appellant also asked to have the jury admonished to disregard the question. This request was denied.

Appellant asserts the prosecutor's remark placed him "in a position of grave peril to which he should not have been subjected," and therefore it was error to deny his Motion for a Mistrial. *See, e.g., Morgan v. State,* (1981) Ind., 419 N.E.2d 964; *Woodford v. State,* (1980) Ind., 405 N.E.2d 522.

When an appellant makes such an assertion, we look to the probable persuasive effect of the misconduct on the jury's decision. *Woodford, supra; Maldonado v. State,* (1976) 265 Ind. 492, 355 N.E.2d 843. In the case at bar, given the defendant had already stated he felt he was guilty, and also considering the overwhelming evidence that he committed the homicide, we doubt the jury's decision could have been influenced by the prosecutor's remark. We hold the trial court did not abuse its discretion in denying the Motion for a Mistrial.

Appellant claims the trial court erred in not allowing him to ask questions of one of his own witnesses, his sister, about the effects of alcohol on him. The prosecutor's objection was that the question was irrelevant due to remoteness; that the witness' basis for her knowledge of the effects of alcohol on appellant was her observations of his behavior after ingestion of alcohol in incidents occurring more than ten years ago.

Remoteness in time of the occurrence of an incident is a basis for exclusion of evidence regarding the incident on grounds of relevancy. *Doty v. State,* (1981) Ind., 422 N.E.2d 653; *Stacks v. State,* (1978) 175 Ind.App. 525, 372 N.E.2d 1201. Appellant argues remoteness in time, however, is

ordinarily a consideration that goes to the weight to be given to the evidence and not its admissibility. *See, e.g., Allen v. State,* (1982) Ind., 431 N.E.2d 478; *Grey v. State,* (1980) Ind., 404 N.E.2d 1348; *Austin v. State,* (1974) 262 Ind. 529, 319 N.E.2d 130. Though appellant is correct, trial courts are accorded wide discretion in ruling evidence inadmissible on grounds of irrelevancy due to remoteness. *Id.* We see no abuse of discretion in this case. *See, e.g., Stacks, supra* (no abuse of discretion in excluding on basis of remoteness evidence of drug-induced insanity in form of armed services medical report prepared within a year of commission of offense). We also note in appellant's offer to prove it was shown the witness would testify that upon consuming alcohol appellant became "loud and combative." Intoxication operates as a defense so as to excuse criminal culpability only when the actor is so intoxicated that the presence of the required intent for the commission of the offense is negated. *Cowans v. State,* (1980) Ind., 412 N.E.2d 54; *Owens v. State,* (1980) Ind., 400 N.E.2d 1124. We hold the trial court did not abuse its discretion in ruling the evidence irrelevant on grounds of remoteness.

Appellant claims the trial court erred in overruling his objection to a question asked by the prosecutor of Dr. David Jentz, the pathologist who performed an autopsy on the body of the decedent. "[B]ased upon your examination and based upon your experience as a pathologist, were you able to determine whether or not there were any signs of a struggle?" Appellant's objection that the witness was not competent to answer the question because it was beyond his area of expertise and the jury was as capable as he was of determining whether or not a struggle had occurred was overruled. Dr. Jentz then answered that he found no abrasions, lacerations, or other injuries anywhere on the decedent's body indicating a struggle had occurred.

Appellant's objection is not well taken. It is true it was for the jury to determine the ultimate fact of whether or not a struggle had occurred. An expert

cannot testify as to an ultimate fact that the jury is as capable as he is to decide. *Reburn v. State*, (1981) Ind., 421 N.E.2d 604. But here the expert did not testify as to the ultimate fact. He only testified as to facts he personally observed, that the body bore no signs of a struggle. *See generally*, 23 C.J.S. *Criminal Law* § 871(3) (1961) (expert medical witness may testify his examination of a decedent's body bore no signs of a struggle with an assailant). The expert was entitled to explain the significance of his factual observation. The expert testifying from personal knowledge is entitled to state the factual background from which he bases an opinion. *See, e.g., Worthington v. State*, (1980) Ind.App., 409 N.E.2d 1261. We hold there was no error committed in overruling appellant's objection.

Appellant claims the trial court erred in modifying his Tendered Final Instruction No. 1, which in its original form reads:

"The defendant has testified as a witness in the trial of this case. Under the law, he has a right to testify and is a competent witness in his own behalf. You have no right to disregard or disbelieve his testimony, or to look upon his testimony with suspicion, merely because he is the accused in this case. His evidence should be weighed by the same rules which apply to the evaluation of the evidence of any other witness who has testified. You, the members of the jury, should fairly and impartially consider the testimony of the defendant together with all of the other evidence in this case.

"If you have no reason to disbelieve the evidence of the accused other than the fact that he does stand charged in this case, you should believe his testimony to be the truth. If from all the evidence, including the testimony of the accused, the jury entertains a reasonable doubt about the guilt of the accused you should give the defendant the benefit of the doubt and acquit him."

The trial court modified the instruction by deleting the second paragraph.

Appellant contends the trial court erred in doing so because the second paragraph was a correct statement of the law, there was evidence in the record to support giving the instruction, and the subject matter of the instruction was not adequately covered in other instructions. Appellant cites *Lottie v. State*, (1980) Ind., 406 N.E.2d 632 in support of his contention the second paragraph of the instruction was a correct statement of the law. The State does not dispute that there was evidence in the record to support giving the instruction.

In the *Lottie* case the modified instruction we approved as a correct statement of law reads:

" 'The defendant is a competent witness in his own behalf. His testimony should be taken, considered and weighed the same as that of any other witness in this case.' " *Id.* 406 N.E.2d at 638.

The language above more closely parallels the subject matter of the portion of appellant's instruction that was given, than it does the excluded second paragraph.

█ The requirement of proof of guilt beyond a reasonable doubt was covered in the court's Preliminary Instructions Nos. 3 and 4 and in its Final Instructions Nos. 3 and 4. It is not error to refuse instructions when the subject has been adequately covered in other instructions. *McKinley v. State*, (1978) 269 Ind. 240, 379 N.E.2d 968.

█ We hold there was no error in giving appellant's Tendered Final Instruction No. 1 in its modified form.

█ Appellant claims the trial court erred in refusing to give his Tendered Final Instruction No. 2 which covered intent. The State's Final Instruction No. 4, which was given, covered the subject. It is not error to refuse an instruction the subject matter of which is adequately covered in an instruction that is given. *Powers v. State*, (1982) Ind., 431 N.E.2d 799; *Akins, supra.*

We hold the trial court did not err in refusing appellant's Tendered Final Instruction No. 2.

█ Appellant claims the trial court erred in refusing to give his Tendered Final Instruction No. 4 which covers the law rele-

vant to a case of circumstantial evidence. We held a similar instruction was properly refused in *Turner v. State,* (1970) 254 Ind. 195, 258 N.E.2d 641. The Court in *Turner* pointed out that such an instruction is proper only where the material elements of the offense are founded upon circumstantial evidence. In the case at bar appellant testified he strangled the decedent; thus the presence of the material element of the killing itself is not founded upon circumstantial evidence. Therefore the instruction was properly refused.

Appellant contends the conviction cannot stand because of insufficiency of the evidence.

■■■ We do not reweigh the evidence nor judge the credibility of witnesses. *Bivins v. State,* (1982) Ind., 433 N.E.2d 387.

■■■ In the case at bar there is substantial evidence of probative value to support the finding appellant knowingly killed the decedent. The gist of his testimony was that after the decedent told him she was going to leave the State with their children, he became angry. According to his testimony, she grabbed a baseball bat and was going to strike him with it. He then wrested the bat from her and proceeded to strangle her with a piece of wire he had in his pocket. He stated he did so exerting "quite a bit" of pressure. The pathologist testified the period of strangulation required to cause death in the manner in which the decedent died was three to five minutes. From this evidence the jury could have concluded beyond a reasonable doubt appellant committed the act of killing another human being while aware of a high probability that he was doing so. The presence of the "knowing" intention to kill may be inferred from evidence the accused used a deadly weapon in a manner likely to cause death. *Hulen v. State,* (1980) Ind., 413 N.E.2d 907. The jury could have reasonably concluded appellant was aware of a high probability that choking a victim with a piece of wire while exerting "quite a bit" of pressure for a period of three to five minutes would cause death.

In this regard appellant argues the evidence shows at most he committed the act of killing while under a sudden heat of passion that as a mitigating factor reduced what would otherwise be murder to voluntary manslaughter. *See, e.g., Wolfe v. State,* (1981) Ind., 426 N.E.2d 647; *Bates v. State,* (1980) Ind., 409 N.E.2d 623; I.C. § 35–42–1–3 [Burns 1979 Repl.].

The state of the defendant's mind must be determined by looking at the facts and circumstances surrounding the killing and the method of killing. *Bates, supra; Blood v. State,* (1980) Ind., 398 N.E.2d 671.

■■■ It is appellant's position that his testimony that he became incensed and "lost [his] mind" when the decedent threatened to move out of the State with his children constitutes the evidence of "sufficient provocation to excite ... anger [or] sudden resentment ... to obscure the reason of an ordinary man ...." *Dickens v. State,* (1973) 260 Ind. 284, 293, 295 N.E.2d 613, 619. We disagree. Merely showing one perceived himself as angered or resentful by an alleged act of provocation is not enough; the provocation must be adequate to arouse the emotions of an *ordinary* man so as to obscure his reasoning powers. *See, e.g., Hooks v. State,* (1980) Ind., 409 N.E.2d 618 (decedent/wife's removal of all funds from joint checking account and failure to provide food at home for children was not "adequate" provocation). *See generally,* 15 I.L.E. *Homicide* § 32 (1959); 40 Am.Jur.2d *Homicide* § 61 (1968); 40 C.J.S. *Homicide* § 46 (1944). The threat by an ex-spouse to remove one's children to another state is not sufficient provocation to reduce a homicide to manslaughter.

■■■ Appellant also contends the State failed to meet its burden of negating beyond a reasonable doubt his claim of self-defense. The burden of proof for negating a self-defense claim is on the State once the defendant raises the issue through the presentation of evidence. *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260.

■■■ To establish a claim of self-defense the defendant must show (1) he was

in a place he had a right to be, (2) that he acted without fault, and (3) that he acted in reasonable fear or apprehension of death or great bodily harm. *Dean v. State,* (1982) Ind., 432 N.E.2d 40; *Loyd, supra.* In the case at bar the evidence shows he attacked the decedent with deadly force after any danger to him had passed. He testified he placed the wire around the decedent's neck after he had wrested the baseball bat from her. The right of self-defense passes when the danger passes. *Schlegel v. State,* (1958) 238 Ind. 374, 150 N.E.2d 563. We hold the evidence supports a finding that appellant was not acting in self-defense.

Appellant claims the trial court erred in sentencing him to the presumptive term of forty years imprisonment. I.C. § 35–50–2–3 [Burns 1979 Repl.] provides for a forty year term of imprisonment upon conviction for murder with a reduction of up to ten years being authorized where "mitigating circumstances" are found to be present. Appellant asserts there are substantial mitigating circumstances present in his case, including his good employment record, the lack of a history of criminal activity, and the fact the victim partially induced the commission of the offense.

■■■■■ The authority to determine the length of a sentence is in the trial court. We will reduce the sentence only where it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.R.App.Rev.Sen. 2. A finding of mitigating factors is discretionary with the trial court. *Cornelius v. State,* (1981) Ind., 425 N.E.2d 616. In light of these considerations we decline to reduce the length of appellant's sentence.

The trial court is in all things affirmed.

All Justices concur.