James G. ASCHERMAN, Appellant–
Petitioner Below,

v.

STATE of Indiana, Appellee–
Respondent Below.

No. 43A03–9010–CR–00442.

Court of Appeals of Indiana,
Third District.

July 24, 1991.

Howard S. Grimm, Jr., John M. Haecker, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

STATON, Judge.

James Ascherman appeals his convictions for two counts of Dealing in a Schedule I Controlled Substance, a Class B felony [1]; two counts of Possession of a Schedule I Controlled Substance, a Class D felony [2]; Dealing in Marijuana, a Class D felony [3]; and Possession of Marijuana, a Class D felony [4]. He presents four issues for our review:

I. Whether audio tape recordings of drug transactions and accompanying transcripts were erroneously admitted into evidence?

II. Whether State's Exhibit 10 was erroneously admitted into evidence?

III. Whether the trial court erroneously permitted the jury to possess State's Exhibit 10 during deliberations?

IV. Whether evidence of prior criminal charges was erroneously admitted into evidence during the habitual offender portion of Ascherman's trial?

We affirm.

Evidence adduced at Ascherman's trial disclosed that on June 14, 1989, Ascherman possessed over thirty grams of marijuana which he delivered to a Kosciusko County Sheriff's Department informant. On August 29, 1989 and on August 30, 1989, Ascherman possessed and delivered methylenedioxymethamphetamine ("MDMA" or "ecstasy").

1. IND CODE 35–48–4–2(1)

2. IND CODE 35–48–4–7(a)

3. IND CODE 35–48–4–10(a)(1)

4. IND CODE 35–48–4–11(1)

## I.

### *Admission of Tapes and Transcripts*

William Julian, the confidential informant in this case, recorded his contacts with Ascherman via an audio tape recorder. Julian was also outfitted with a radio transmitter which permitted Detective Sergeant Sam Whitaker of the Kosciusko County Sheriff's Department to contemporaneously monitor each recorded conversation. Detective Whitaker's secretary transcribed the series of tapes obtained from Julian; the transcripts were then reviewed and revised by Detective Whitaker.

At trial, Julian and Detective Whitaker each testified that the tapes accurately represented conversations between Ascherman, William Julian, Patricia Julian and Tammy Sams. The State then offered into evidence three tapes and accompanying transcripts.

A hearing on Ascherman's motion to suppress was held outside the presence of the jury. Defense counsel argued that the tapes were unclear and that some portions were inaudible. He suggested that an instruction be given to the jury "that the transcript isn't gospel." Record, p. 444. The trial court complied with this request, admonishing the jury:

"Ladies and Gentlemen, as I indicated to you, the tapes are in general fairly clear. There are problem areas, areas which you may have trouble hearing, which you may have trouble deciphering precisely. The point I want to make to you is that it is your duty to make an independent judgment as to what you hear from the tapes as to whether the transcript—the tapes authenticate or bear with the transcripts. There is a possibility that the police may have not transcribed the tapes correctly, didn't hear clearly or something and the point I wanted to make is that you make an independent judgment from what you hear on the tapes as to the accuracy of the transcripts or actually what was said and by whom at those conversations that are being taped. Is that essentially the point—"

Record, pp. 506–7.

■ On appeal, Ascherman requests that we review the challenged tapes and determine whether they were sufficiently audible for submission to the jury. He argues that the tapes failed to meet the foundational requirements of *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795.

In *Fassoth v. State* (1988), Ind., 525 N.E.2d 318, appellant Fassoth argued that tape recordings derived through the use of a recording device concealed in an informant's clothing failed to comply with the standard enunciated in *Lamar*. The *Fassoth* court stated:

"Appellants' case is distinguishable from *Lamar*. The tape played at appellants' trial did contain sounds of static and interference. However, the portion played to the jury was sufficiently audible to understand that they were in the midst of a drug sale. Further, the standard of quality expected of a recording in an interrogation room cannot be used to judge a recording of a person wearing a 'bug.' ... Also, the content of the tape-recorded conversation was merely cumulative of William Fassoth's [appellant's brother's] testimony about the drug transaction."

*Id.* at 324.

Pursuant to Ascherman's request, we have reviewed the tapes submitted at his trial. The tapes contained numerous background noises including music, children playing, television programs, and mechanical sounds. However, the conversations accompanying the drug transactions at issue were audible. Additionally, the tape-recorded conversations were cumulative of Julian's testimony that Ascherman possessed and sold drugs on three occasions. We conclude that, under the standard delineated in *Fassoth, supra,* the tapes were properly admitted into evidence.

■ Ascherman also argues that the transcripts should not have been admitted into evidence, as he did not stipulate to their accuracy. He refers us to *Bryan v. State* (1983), Ind., 450 N.E.2d 53. The *Bryan* court acknowledged that a trial court judge may, in the exercise of sound discretion, furnish jurors with a copy of

transcripts to assist them in listening to tapes, but noted that transcripts will ordinarily be admitted where both sides agree to their use. However, the court concluded that appellant Bryan was not entitled to reversal of his conviction as he had failed to identify any specific statement in the transcript not identical with the recorded conversation. *Id.* at 60.

The State urges that Ascherman has waived any allegation of error with respect to the transcripts' admission, because of his acquiescence in admission and request for a limiting instruction prior to making his objection that the transcripts were unnecessary. Notwithstanding waiver, Ascherman has not demonstrated reversible error. Here, as in *Bryan,* Ascherman refers to no specific discrepancy between the transcripts and the recorded conversations.

## II.

### *Admission of State's Exhibit 10*

■ Ascherman alleges that a police statement made by State's witness Tammy Sams (Ascherman's former girlfriend) was erroneously admitted into evidence. Immediately following Sams' in-court testimony, Detective Whitaker testified and was extensively cross examined by Ascherman concerning statements Whitaker had taken from Sams on December 14 and 15, 1989.

The State moved to admit Sams' December 14 statement into evidence, whereupon Ascherman objected that Sams' statements had been used for a "limited purpose," i.e., to demonstrate coercion and to impeach Sams' trial testimony. He argued that he would be unduly prejudiced by references to uncharged transactions.

When the trial court indicated that Ascherman had invoked "the rule of completeness," defense counsel responded: "If that be the case, your Honor, we want both statements in. The first interview he did with her on the 14th and the one he did on the 15th, the saw should cut both ways." Record, pp. 560–61. The trial court then admitted into evidence State's Exhibit 10, Sams' December 14, 1989 interview, and

Defendant's Exhibit C, Sams' December 15, 1989 interview.

■ As a general rule, where a party introduces part of a conversation or document, the other party is entitled to have the entire conversation or document placed into evidence. *McElroy v. State* (1990), Ind., 553 N.E.2d 835, 839. Admissibility of such evidence is subject to two limitations. First, the offered remainder must be relevant to the portion previously introduced. Secondly, incompetent evidence which is highly prejudicial should be excluded. *Ryans v. State* (1988), Ind.App., 518 N.E.2d 494, 496.

During cross-examination of Whitaker, Ascherman posed various questions concerning references in Sams' statements to uncharged drug transactions and drug debt:

> QUESTION: She said cause he should've went down the tube, you know, a long time ago, you know, because he's straightened up and you said to her, no, Jay hasn't and she said to you, yes, he has and then you say to her, he's not and her answer to you was, *he doesn't deal in f____ coke anymore....*

Record, p. 520.

> QUESTION: But we want that *old drug debt* business in here, don't we because that makes him look bad in front of the jury, doesn't it, old drug debts?

Record, p. 546.

> QUESTION: Go to page 22, up at the top of the page there. Question—is that what was left over from stuff that was got from Hacker or—Answer— yeah, for a long time ago cause like I said, *he hasn't dealt any pot for a long time....*

Record, p. 553.

Ascherman repeatedly violated his own motion in limine prohibiting references to uncharged crime. After unsuccessfully attempting to exclude a statement upon which his cross-examination was based, Ascherman moved to admit a second statement which disclosed additional references to uncharged crime. Both statements were admitted with a limiting instruction that

the jury was to consider only the six charged offenses. Ascherman has failed to demonstrate undue prejudice from the admission of State's Exhibit 10.

### III.

*Submission of State's Exhibit 10 to Jury*

Following the submission of Sams' statements to the jury to be read in the deliberation room before reconvening for the further presentation of evidence, Ascherman moved for a mistrial, citing *Thomas v. State* (1972) 259 Ind. 537, 289 N.E.2d 508, *reh. denied.*

In *Thomas,* our supreme court found reversible error where a statement offered for impeachment, and not as substantive evidence, was permitted in the jury room during deliberations over a defendant's objection. The court noted that, should a jury be permitted to study a statement at leisure, the statement might be considered for the truth of the contents and might be given undue weight. *Id.* 289 N.E.2d at 509.

While presenting his argument before the trial court, Ascherman's counsel noted the obvious circumstance distinguishing *Thomas* from the instant case: "Now you might say, well, they aren't deliberating back there but the point is, they have them back there in the jury room ..." Record, p. 651.

■ We do not find that the trial court abused its discretion by permitting the jurors to read State's Exhibit 10 in their deliberation room at the conclusion of the State's presentation of evidence but before Ascherman's presentation of evidence. *See Deel v. State* (1976) 265 Ind. 577, 357 N.E.2d 240, 243, *reh. denied.*

As State's Exhibit 10 was properly examined by the jury, Ascherman was not subjected to a position of grave peril necessitating the declaration of a mistrial.

### IV.

*Evidence of Prior Criminal Charges*

Ascherman contends that the finding that he is an habitual offender should be reversed, due to the admission of several exhibits disclosing charges of which he was never convicted. The State's exhibits included certified copies of informations charging Ascherman with four counts of burglary and one count of auto banditry not resulting in convictions.

■ Ascherman argues that he was prejudiced in that the jury was permitted to infer that he had committed prior crimes without retribution. He additionally argues, quite correctly, that his efforts to exclude references to extraneous charges were rebuffed:

MR. GRIMM: Now he's charged him with Count I in the habitual and he's hooked onto an amended Count II for Auto Banditry which he isn't charged with at all in this habitual thing and we object to that because it's prejudicial, it's surplusage, it has absolutely nothing to do with this and can only prejudice defendant in this phase of this trial. Same thing with the docket sheet, we make the same objection there because it just—and we move the Court to knock off at least the second page amended, Auto Banditry, Count II, and to redact it if he's going to admit it, the docket, to only show this other. I tell you what, *in an effort to help clean up the whole thing and on behalf of the defendant, we would if we can look at this, stipulate to the dates of his arrest or the commission of the crimes against him and stipulate to the dates of his conviction on the basis that we could throw all the rest of this stuff out.* Now, if he's truly genuine about wanting to just prove the two prior convictions, then we're helping him prove them but we're not helping him prejudice this jury against this particular defendant with all this trash.

COURT: The State accept that offer?

STATE: No.

COURT: Objections to State's Exhibits 20 and 21 overruled. We'll receive those into evidence....

Record, pp. 858–60.

In *Cornett v. State* (1989), Ind., 536 N.E.2d 501, the court considered an habitual offender's claim that he was prejudiced by the admission of extraneous documents including a charging information. Although the submission of such documents to the jury was improper, the court concluded that no reversible error occurred, as the function of the jury was simply to determine whether the appellant had committed two prior felonies and not to sentence him. *Id.* at 506.

The admission of documents charging Ascherman with the commission of crimes of which he was never convicted was erroneous. However, erroneous admission of evidence in an habitual offender proceeding will not result in reversal of the judgment if the evidence supporting the jury's findings is substantial or overwhelming. *Golden v. State* (1985), Ind., 485 N.E.2d 51, 57. Substantial evidence was presented to support the jury's determination that Ascherman had committed two prior felonies.

Affirmed.

HOFFMAN and RUCKER, JJ., concur.