Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 30 2013, 7:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD E. BAIER**
Baier & Baier
Mount Vernon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FLOYD D. STEWART, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 65A05-1212-CR-656 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE POSEY SUPERIOR COURT
The Honorable S. Brent Almon, Judge
Cause No. 65D01-1109-FA-511

**July 30, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Following a jury trial in Posey Superior Court, Floyd D. Stewart ("Stewart") was convicted of two counts of Class A felony dealing in cocaine and sentenced to concurrent terms of twenty-three years, with twenty-one years executed and two years suspended. Stewart appeals and claims that the trial court abused its discretion when it admitted into evidence audio recordings of Stewart's conversations with a police informant and the transcripts made from these recordings.

We affirm.

**Facts and Procedural History**

In the spring of 2011, an individual contacted Kenneth Rose ("Rose"), an investigator with the Posey County Prosecutor's Office and head of the Posey County Drug Task Force, and told Rose that he would be willing to act as confidential informant ("CI") and purchase illicit drugs in exchange for money. This CI gave Rose the names of several people in Posey County from whom he believed he could purchase drugs. Among these people was Stewart, who the CI stated sold cocaine. The CI had personally known Stewart and some of his family for approximately ten years. The CI later met with FBI Special Agent William Gray ("Agent Gray"), the coordinator of the Southwest Indiana Violent Crime Task Force, who was working with local law enforcement.

On May 27, 2011, the CI telephoned Stewart in the presence of Agent Gray as Gray recorded the conversation. In this conversation, Stewart told the CI that his supplier, Anthony Gadson ("Gadson"), had not yet given him a price but that he was preparing to bring a half ounce each of "soft" and "hard," which the CI explained referred to powdered and crack cocaine, respectively. Tr. p. 61. Following this conversation, on

June 3, 2011, the CI conducted a controlled buy from Gadson and Stewart. Prior to the actual purchase, the CI telephoned Stewart four times, and these calls were recorded by the police. During the final call, Stewart told the CI that Gadson would meet them nearby. Agent Gray and Evansville Police Officer Michael Kennedy ("Officer Kennedy") then searched the CI and his vehicle, gave him $800 in buy money, and equipped him with a recording device. While under surveillance by the police, the CI drove to Stewart's home, picked him up, and drove to a nearby car wash. There, the CI gave Stewart the $800, and he eventually drove Stewart back to his home to meet with Gadson. Stewart left the CI's car and entered Gadson's vehicle. Gadson then drove Stewart around the block. Upon returning, Stewart then entered the CI's vehicle and gave him 5.8 grams of cocaine.

The CI telephoned Stewart again on June 9, 2011, to set up another controlled buy, and this conversation was recorded. The CI then conducted another controlled buy from Stewart. During this buy, Stewart got into the CI's car, and the two went to a nearby gas station, where Gadson was parked in his vehicle. Stewart took $800 from the CI, received 4.9 grams of cocaine from Gadson, and gave it to the CI. Again, Stewart's conversation with the CI was recorded by means of a device the CI was wearing.

As a result of these incidents, on September 28, 2011, the State charged Stewart with two counts of Class A felony dealing in cocaine in an amount in excess of 3 grams. A jury trial was held on October 31 and November 1, 2012. At the trial, over Stewart's objections, the State introduced into evidence the recordings of the telephone conversations between the CI and Stewart and the recordings of their conversations

3

during the controlled buys. Transcripts of these conversations were also admitted into evidence. The jury found Stewart guilty as charged. On November 27, 2012, the trial court sentenced Stewart to concurrent sentences of twenty-three years, with twenty-one years executed and two years suspended to probation. Stewart now appeals.

**Standard of Review**

Stewart claims that the trial court erred in the admission of evidence. In reviewing this claim, we are mindful that questions regarding the admission of evidence are left to the sound discretion of the trial court, and on appeal, we review the trial court's decision only for an abuse of that discretion. Wells v. State, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009). The trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. Id.

**Discussion and Decision**

Stewart claims that the trial court erred in the admission of the recordings made of the CI's telephone conversations with Stewart on May 27, June 3, and June 9, 2011, and the recordings of Stewart's conversations with the CI made from the recording device the CI wore during the controlled buys on June 3 and June 9, 2011. He also complains that the transcripts made from these recordings should not have been admitted into evidence.

A. *Admission of the Recordings*

We first address Stewart's arguments regarding the admission of the recordings. On appeal, Stewart claims that the quality of the recordings is so poor that the jury had to speculate as to their content. The admission of a sound recording should be preceded by

4

a foundation disclosing that the recording is, *inter alia*, authentic and correct and of such clarity as to be intelligible and enlightening to the jury. Hall v. State, 897 N.E.2d 979, 981 (Ind. Ct. App. 2008) (citing Lamar v. State, 258 Ind. 504, 512-13, 282 N.E.2d 795, 800 (Ind. 1972)).

Stewart objected at trial based upon this first requirement—that the recording be authentic. On appeal, he seems to have abandoned this argument, and with good reason. The CI repeatedly testified that he had listened to each recording and that the recordings accurately captured his conversations with Stewart. See Tr. pp. 57-58, 62, 68, 75, 80. Stewart's suggestion that the CI was inherently unreliable is simply an attack on the CI's credibility, and we do not reassess witness credibility on appeal. See Jackson v. State, 890 N.E.2d 11, 15 (Ind. Ct. App. 2008) (noting that court on appeal will not reweigh evidence in reviewing claim of evidentiary error).

Stewart now claims only that the recordings were of insufficient quality to be intelligible and enlightening to the jury. We disagree. We have listened to the recordings and find them to be quite intelligible, considering the conditions of their recording. There are parts that are hard to understand or outright unintelligible, but not due to the quality of the recordings themselves as much as to the fact that the speakers were talking over one another, mumbling, or drowned out by other noises such as traffic and the radio. Suffice it to say that the recordings are of sufficient quality that they could be intelligible and enlightening to the jury, without the jury having to resort to speculation. Thus, the trial court did not abuse its considerable discretion in admitting these recordings into evidence. See Sharp v. State, 534 N.E.2d 708, 712 (Ind. 1989) (holding that admission of

5

recorded conversation was not an abuse of discretion where, although occasional static interrupted recorded conversation and television noise was audible, the recording was sufficiently clear that the jury was not forced to speculate as to the content of the recordings); Fassoth v. State, 525 N.E.2d 318, 324 (Ind. 1988) (concluding that admission of tape recording was proper even though it contained sounds of static and interference because the portion played to the jury was sufficiently audible to reveal that the parties were in the midst of a drug sale).[1]

B. *Admission of the Transcripts*

Stewart also complains that the trial court improperly admitted the transcripts made from the recordings into evidence. A trial court has the discretion to allow the use of a transcript, as an aid for the jury to understand the recorded statement. Tobar v. State, 740 N.E.2d 106, 107 (Ind. 2000) (citing Bryan v. State, 450 N.E.2d 53, 59 (Ind. 1983)). In such cases, the trial court should instruct the jury that the transcript should not be given independent weight and that jurors are to rely on what they hear rather than on what they read when there is a difference. Id. Transcripts should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence, as the best evidence of the statement or conversation is the recording itself. Id.

---

[1] Also, as noted in Fassoth, "the standard of quality expected of a recording in an interrogation room cannot be used to judge a recording of a person wearing a 'bug.'" Id. Where a hidden recording device is worn underneath clothing, and the informant is moving in and out of a vehicle, some "interference and static on the tape [are] inevitable."

6

Here, it appears that although the trial court admitted the transcripts into evidence, Stewart never stipulated as to the accuracy of the transcripts. Therefore the admission of the transcripts was improper. See id. Still, reversal is not necessarily required, as Stewart has referred us to no specific discrepancy between the transcripts and the recordings and, therefore, no prejudice. See Bryan v. State, 450 N.E.2d 53, 60 (Ind. 1983) (holding that defendant failed to demonstrate prejudice in providing jury with transcript of recording where he could not identify where the transcript and the recording differed); Ascherman v. State, 575 N.E.2d 277, 280 (Ind. Ct. App. 1991) (holding that defendant had not established reversible error where, despite erroneous admission of transcripts, defendant referred to no specific discrepancy between the recorded conversations and the transcripts thereof); see also Sharp v. State, 534 N.E.2d 708, 712-13 (Ind. 1989) (holding that providing the jury with transcripts of recording was harmless, cumulative evidence where defendant had not shown how single discrepancy between the recording and the transcript prejudiced him).

Additionally, we cannot ignore that the trial court here instructed the jury as follows:

> Audio recordings have been admitted as evidence in this case. Transcripts of those recordings were also admitted and provided to you as the audio recordings were played. *The transcripts should not be considered as substantive evidence* and were provided as an aid to you in listening to the audio recordings. If there were any differences between the audio recordings or [sic] transcripts or any differences in meaning that may arise from factors such as voice inflection or inaccuracies in the transcripts, *you should rely on what you heard rather than what you may have read in the transcript. You should give evidentiary value, if any, to the audio recordings only*.

7

Tr. p. 213 (emphasis added).[2]

In <u>Tobar</u>, our supreme court held that the trial court erroneously admitted the transcript of defendant's statement to the police but concluded that the error was harmless, specifically noting that the trial court admonished the jury that the transcript was provided only as an aid and that the recording was the evidence to consider if there were any discrepancy between the recording and the transcript. 740 N.E.2d at 108. Similarly, in <u>Bryan</u>, in holding that the defendant had failed to establish prejudice in the admission of the transcripts, our supreme court noted that the trial court in that case gave such an instruction or admonishment to the jury. 450 N.E.2d at 60; <u>see also</u> <u>Sharp</u>, 534 N.E.2d at 712-13 (Ind. 1989) (noting that, upon defendant's objection to providing the jury with transcripts, trial court admonished the jury that their determination should be based upon what they heard on the recordings and not what they read in the transcripts and that it was their job to determine whether there were variances between the tapes and the transcripts). Likewise, in the case before us, the jury was properly instructed concerning the admitted transcripts. With that instruction, and considering <u>Tobar</u>, <u>Bryan</u> and <u>Sharp</u>, the trial court's error was harmless.

## Conclusion

The trial court did not abuse its discretion when it admitted the audio recordings of the CI's telephone calls and interactions with Stewart into evidence, and, in light of the

---

[2] To the extent that Stewart now claims that this instruction was improper or inadequate, this claim is waived. He failed to object to the trial court's instruction, and he fails to set forth a separate, cognizable argument with regard to instructional error.

trial court's jury instruction concerning the transcripts of those audio recordings, the error committed in admitting those transcripts was harmless error.

Affirmed.

BAKER, J., and MAY, J., concur.