William TOBAR, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 71S00–9912–CR–687.

Supreme Court of Indiana.

Dec. 20, 2000.

Thomas P. Keller, South Bend, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

William Tobar was convicted of the murders of Keith Canady, James Johnson, and Clester Wallace, Jr. and sentenced to consecutive sentences of sixty-five, sixty-five, and sixty years, respectively, for a total of 190 years. In this direct appeal, William argues that the trial court erred by admitting into evidence transcripts of William's two videotaped statements to authorities. We affirm the trial court.

**Factual and Procedural Background**

On March 23, 1999, William, along with several others, was a visitor at the home of Ricky Tobar, William's cousin. Ricky sold crack cocaine from his home and William often acted as the "doorman" in drug sales. At some point after noon, Keith Canady and a man nicknamed "Bummy" arrived to purchase crack cocaine. Jovanna Harris,

one of Ricky's friends, stated that it was "her serve" and rode with Bummy to an ATM to obtain cash for the sale. Canady remained at Ricky's home with the others. Harris soon returned, crying, and told the others that Bummy had held a gun to her head and taken her money and drugs.

In response to this news, William punched Canady in the face, knocking him across the room. William then dragged Canady down to the basement, and proceeded to beat him until he confessed to a plan to rob the occupants of Ricky's house. He subsequently hog-tied Canady with electrical cords, speaker wire, and coat hangers, continued to beat him and, later that evening, suffocated him by gagging him and securing plastic bags around his neck with speaker wires and hangers.

At approximately 8:45 p.m., Johnson and Wallace arrived. William overpowered Johnson, beat him, and tied his hands behind his back as he lay on the floor. Wallace lay down on the floor. Then, either William or Ricky shot Johnson in the head and Wallace in the back and the chest. Both were killed. William poured kerosene over Canady's body and set it on fire. He then blew out the pilot lights on the stove, turned on the gas, removed the knobs, and fled.

After police had questioned family members and others present at the crime scene, William was brought in for questioning. He confessed to all three murders, stating that he had the "baddest hands" in South Bend. He further stated, "I don't even feel no remorse for those punk[s] . . . and like tell ya . . . if I have to do it again . . . I would do it again." He later requested to speak to authorities again and claimed that he had taken part in Canady's murder, but that Ricky had been the triggerman in the murders of Johnson and Wallace. In separate trials, William and Ricky were convicted of the murders of all three men. The differences in terminology and in the description of these events between this case and Ricky's

appeal are due to differences in the testimony at the two trials.

### Admission of Transcripts

 Citing *Bryan v. State*, 450 N.E.2d 53, 59 (Ind.1983), William argues that the trial court erroneously admitted two transcripts of his videotaped statements to officers from St. Joseph County's Special Crime Unit. In *Bryan*, 450 N.E.2d at 59, this Court set forth the standard for the use of transcripts of taped statements at trial, adopting the standard enunciated by the Eighth Circuit in *United States v. McMillan*, 508 F.2d 101, 105–06 (8th Cir.1974). Under *Bryan*, the trial court has the discretion to allow the use of a transcript as an aid for jurors in understanding taped statements. If a transcript is used as an aid, the trial court should instruct the jury that the transcript should not be given independent weight and that jurors are to "rely on what they hear rather than on what they read when there is a difference." 450 N.E.2d at 59 (quoting *McMillan*, 508 F.2d at 105–06). However, "[t]ranscripts should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence." *Id.* The best evidence of the statement or conversation remains the tape itself. In *Bryan*, this Court concluded that the use of a transcript to assist jurors in understanding a recording that is played simultaneously is proper. *Id.* at 60. William argues that because the actual transcripts of his videotaped statements were admitted into evidence, his case is distinguishable from *Bryan* and reversal is required.

Here, over William's objection, the trial court admitted the transcripts of William's videotaped statements to authorities. In doing so, the trial court admonished the jurors extensively:

 I also will be granting over objection the State's request that [the transcript] be distributed to you to be used by you simultaneously with the playing of the exhibit as an aid to you in listening and

interpreting the audio part of this exhibit.

But I want to be very careful about this, and I want you to be very careful about this. This so-called transcript—when we think transcript, I think in our mind of an image that's authority; that's it; that's the transcript.

Well, this is not a certified transcript. This is what some person who listened to the tape and took down what that person thought was being said. Now, that person thought that's what was being said. That's their opinion. That's okay, and you can use it as an aid to you. But what that person thought was being said is not what counts. It's what you think you hear that counts.

So if there's a different—if that so-called transcript says something different than you think you heard, what you think you heard is what you are to go by, not what that thing says on paper.

The trial court also allowed defense counsel to highlight to the jury discrepancies between the transcripts and the videotapes. Defense counsel told the court that there were none of note in one of the transcripts, but apprised the jury of discrepancies in the second transcript.

■ Despite these precautions, the admission of these transcripts into evidence was error. We recently had occasion to address this issue in *Small v. State,* 736 N.E.2d 742, 748–49 (Ind.2000). There, as here, because the defendant had not explicitly agreed to the admission of the transcript into evidence, it was error for the transcript to be admitted as an exhibit as opposed to its use purely as an aid in understanding inaudible portions of the recorded statement. *Id.* Whether this error requires reversal is another matter. An error in the admission of evidence "will be found harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as to not affect the substantial rights of the parties." *Fleener v. State,* 656 N.E.2d 1140, 1142 (Ind.1995); *see also* Ind. Trial Rule 61.

Evidence that is merely cumulative is not grounds for reversal. *Sharp v. State,* 534 N.E.2d 708, 712–13 (Ind.1989).

■ William argues that he was prejudiced by the cumulative impact of his statements and the transcripts because the jury effectively "gave greater weight to those statements than to any testimony in Court." William urges that the transcripts were especially damaging given that William's statements were the only direct evidence linking William to the three murders. We disagree. As in *Small,* it is unlikely that the admission of these transcripts contributed to the verdict. Although the transcripts were admitted into evidence, the trial court admonished the jury to use them only as aids in understanding the videotaped statements and to rely on what they heard over what was written. William's statements alone were so damaging that the admission of the transcripts could not have been decisive. Moreover, William is not correct in asserting that no other direct evidence linked him to the three murders. Witnesses to the crime placed William at the crime scene and independently substantiated William's statements. They reported seeing William punch Canady, kick him, and drag him into the basement. William himself later led authorities to spent shell casings he admitted he discarded after the crime.

William also contends that the admission of these transcripts violated the balancing test of Indiana Rule of Evidence 403. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." According to William, the admission of these transcripts into evidence along with the videotaped statements placed undue emphasis on William's statements to authorities and unfairly prejudiced William.

Even if the relevance of the transcripts were outweighed by the concern of needless presentation of cumulative evidence, for the reasons explained above, any error in the admission of this evidence did not affect William's substantial rights and was harmless.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.