**Toriano ROBY, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 71S00–0004–CR–274.**

Supreme Court of Indiana.

Feb. 27, 2001.

Thomas P. Keller, South Bend, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

Appellant Toriano Roby battered three-year-old Shawn Poindexter to death. A jury found him guilty of murder, reckless homicide, aggravated battery, and class B felony neglect of a dependent. Although

the trial court improperly admitted into evidence a transcript of Roby's videotaped statement to the police, the error was harmless, and we affirm his murder conviction. We vacate the neglect conviction as a violation of Indiana's protection against double jeopardy.

### Facts and Procedural History

On May 2, 1996, Roby's girlfriend left him in sole charge of four children, all under the age of four, when she went to work shortly before 5 p.m. At 5:06 p.m., the South Bend Fire Department received an emergency assistance call and·went to the house. A department captain found three-year-old Shawn lying on the floor, with no vital signs.

Shawn was declared dead early the next morning. ·An autopsy showed five scalp and skull contusions as well as blunt force wounds to Shawn's abdomen. A pathologist testified that the recently-inflicted injuries were inconsistent with accidental trauma, and were probably the result of blunt force applied by a human being. He also expressed extreme doubt that the injuries could have been inflicted by another very young child or during attempts to revive Shawn.

A jury found Roby guilty on all counts charged. The trial court set aside the reckless homicide and aggravated battery verdicts as lesser included offenses of murder. It entered judgments of conviction for murder and class B felony neglect of a dependent, sentencing Roby to consecutive terms of sixty-five years and eighteen years.

### Admission of the Videotape Transcript

■ Roby's lawyer did not object when the trial court admitted into evidence a transcript of his videotaped statement to the police, but did object when the court published copies of the transcript to the jury. At that time, the court admonished the jury:

> Now, the real exhibit is going to be the videotape of the interview. This also has an audio on it. This exhibit is sim-

ply an assistance to you, each of you, while you are listening to the audiotape to assist you in hearing and understanding what is being said.

> Again, I have to remind you that somebody else sat down and played it and took down and created a transcript that you have in your hand. It may be very accurate. There may be mistakes in it, not just typos but wrong words or something.

> If you think you hear something different, you are to go by what you think you hear, not by what is printed by somebody else.

(R. at 556.)

We recently addressed a very similar claim in *Tobar v. State*, 740 N.E.2d 106 (Ind.2000). In *Tobar*, the trial judge allowed jurors to refer to transcripts when viewing the defendant's videotaped statements, after a similar admonition. *Tobar*, 740 N.E.2d at 107. We concluded that the admission of the transcripts was error, but harmless. *Id.* at 108–09.

■ In *Bryan v. State*, 450 N.E.2d 53 (Ind.1983), this Court outlined the appropriate standard for the use of transcripts of taped statements at trial. Transcripts are usually needed only when portions of a tape are inaudible or speakers are difficult to identify, and they "should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and agree to their use as evidence." *Bryan*, 450 N.E.2d at 59 (quoting *United States v. McMillan*, 508 F.2d 101 (8th Cir.1974)).

In *Small v. State*, 736 N.E.2d 742, 748–49 (Ind.2000), the defendant did not explicitly agree to the admission of a transcript that the jurors read as they viewed the defendant's videotaped statement to police. There, as here, defense counsel objected only on grounds that the transcript was cumulative, not that it was inaccurate or otherwise improperly admitted. *Id.*, (R. at 555). Nonetheless, we concluded that the admission was error, noting that the transcript was not used solely as an aid in

interpreting inaudible portions of the recording. *Id.* Similarly, here, the State does not contend that the transcript was necessary to clarify indistinct dialogue on the videotape. The trial court therefore erred in admitting the transcript and publishing it to the jury.

The trial court thus erred, but as in *Small* and *Tobar* the transcript was merely cumulative, and its admission does not require reversal. *See Small,* 736 N.E.2d at 749; *Tobar,* 740 N.E.2d at 108–09. Roby argues that the duplicative evidence of the videotape and transcript unduly emphasized his statement, particularly in light of the fact that no direct evidence linked him to Shawn's death. (Appellant's Br. at 15.)

We disagree. As in *Small* and *Tobar,* it is unlikely that admission of the transcripts affected the verdict. The trial court's admonition made clear to the jurors that they were only to use the transcript as a supplement, and to rely on the videotape as the "real" evidence.

Moreover, it is hard to see how any undue emphasis would have prejudiced Roby's cause. In the taped statement, Roby claimed that Shawn fell while playing, and persistently denied having struck or killed the child. (R. at 830–31, 837–38, 839, 843, 846–47.) The prosecutor rebutted this version of events with uncontroverted medical evidence that Shawn suffered fatal blows at a time when Roby was the only adult present.

The circumstantial evidence against Roby was so damaging that supplementing the videotape with the transcript could not have affected his substantial rights and was harmless.

### Double Jeopardy and the Neglect Conviction

■ Roby next asserts that his conviction and sentencing for both murder and class B felony neglect of a dependent violated his double jeopardy rights under Indiana Constitution Article 1, Section 14.

(Appellant's Br. at 8.) Under *Richardson v. State,* 717 N.E.2d 32, 49, 53 (Ind.1999):

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.
>
> . . . .
>
> . . . [T]he actual evidence presented at trial is examined to determine whether each challenged offense was established by separate and distinct facts. To show that two challenged offenses constitute the "same offense" in a claim of double jeopardy, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.

Roby's claim is like the one we recently addressed in *Mitchell v. State,* 726 N.E.2d 1228 (Ind.2000). Mitchell struck and killed her granddaughter. *Id.* at 1232, 1244. We concluded, applying the *Richardson* double jeopardy analysis, that there was a reasonable possibility that the jury looked to the same evidentiary facts in finding that the defendant knowingly killed the child, and that the defendant's neglect resulted in serious bodily injury to the child. *Id.* at 1244–45.

The same is true here. Class B felony neglect of a dependent requires proof that the neglect resulted in serious bodily injury. Ind.Code Ann. § 35–46–1–4(b)(2) (West 2000). Murder, as charged here, requires proof that the defendant knowingly killed another human being. Ind.Code Ann. § 35–42–1–1(1) (West 2000).

In *Richardson,* we noted that "jury instructions and presentations of counsel to the jury can be helpful to the reviewing court in its analysis of the actual evidence

to determine whether a jury used the same evidence to establish multiple offenses." *Richardson*, 717 N.E.2d at 54 n. 48. In preliminary and final jury instructions, here as in *Mitchell*, the neglect charge alleged that the serious bodily injury was the victim's death. *Mitchell*, 726 N.E.2d at 1244, (R. at 203, 709.) The murder charge in both cases alleged that the defendant struck blows that caused the victim to die. *Mitchell*, 726 N.E.2d at 1244, (R. at 204, 710.) In closing argument here, the prosecutor said he would not "even bother" talking about proof of the elements of the counts other than murder, focusing instead on the non-accidental injuries that Shawn incurred while in the defendant's sole care. (R. at 669.)

As we did in *Mitchell*, we conclude that the State used the same evidence—that of Shawn's freshly-inflicted injuries—to establish both the serious bodily injury required for class B felony neglect and the knowing killing required for murder. Conviction on both counts therefore constitutes double jeopardy under the *Richardson* test.

### Conclusion

We affirm Roby's murder conviction and vacate his conviction for class B felony neglect of a dependent.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.