## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 05 2020, 8:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony S. Churchward
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano-Colon
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Develle A. Banks, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | November 5, 2020 <br><br> Court of Appeals Case No. 20A-CR-811 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable David M. Zent, Judge <br><br> Trial Court Cause No. 02D06-1907-F1-16 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Develle Banks (Banks), appeals following his conviction for two Counts of child molesting, Level 1 felonies, Ind. Code § 35-42-4-3(a)(1); child molesting by fondling, a Level 4 felony, I.C. § 35-42-4-3(b); and dissemination of matter harmful to minors, a Level 6 felony, I.C. § 35-49-3-3(a)(1).

We affirm.

# ISSUES

Banks presents the court with two issues, which we restate as:

1) Whether properly-admitted evidence sustained his conviction beyond a reasonable doubt for child molesting by touching the victim's sex organ with his mouth; and

2) Whether his consecutive sentences are inappropriate given the nature of his offenses and his character.

# FACTS AND PROCEDURAL HISTORY

D.B. was born on January 23, 2008, to Priscella Figueroa (Figueroa) and her biological father (Father). Figueroa and Father discontinued their relationship, but Father exercised regular parenting-time with D.B. Figueroa met Banks in September 2016 when she was donating plasma. The day after meeting Banks, Figueroa allowed him to move into the apartment she shared with D.B., who was nine years old, and D.B.'s thirteen-year-old brother, J.G. Banks lived with

the family and would care for D.B. and J.G. while Figueroa was at work or when she was sleeping after working an overnight shift. D.B. and J.G. considered Banks to be their step-father.

[5] After D.B.'s tenth birthday when the family lived at the Black Bear apartments in Allen County, Banks began exposing his penis to D.B. The family subsequently moved to the Cambridge Square apartments, also in Allen County. The Cambridge Square apartment had its living quarters downstairs and three bedrooms upstairs. J.G. spent a great deal of time in his bedroom upstairs playing videogames while wearing headphones. D.B. preferred to sleep and spend time downstairs. After the move to Cambridge Square, on one occasion while D.B. was watching a movie, Banks came downstairs and forced D.B. to touch his penis with her hand and subsequently made her do so on other occasions. While they lived at Cambridge Square, Banks touched D.B.'s vagina with his hand on more than one occasion. Banks also touched D.B.'s vagina with his tongue, and he inserted his penis into her anus on more than one occasion. Banks told D.B. not to tell anyone, and D.B. did not report Banks' offenses because she was afraid that Banks would hurt her if she did.

[6] In the fall of 2018, Figueroa's relationship with Banks ended. Banks moved out, although he and Figueroa continued to communicate. In the spring of 2019, D.B. saw a presentation at school about good touch/bad touch. On May 22, 2019, D.B. told Figueroa that Banks had touched her inappropriately. Figueroa immediately alerted the authorities and Father. That same day, Father drove from Michigan where he lived to escort D.B. and Figueroa to a

physician so that D.B. could be examined. Later in the day on May 22, 2019, Father telephoned Banks to confront him. After the call with Father, Banks telephoned Figueroa and told her that if anything happened to him or his family, they would retaliate.

[7] On June 5, 2019, D.B. was interviewed by a child forensic interviewer and disclosed acts of molestation by Banks. On July 31, 2019, the State filed an Information, charging Banks with Level 1 felony child molesting by penetrating D.B.'s anus with his penis, Level 1 felony child molesting by touching D.B.'s sex organ with his tongue, Level 4 felony child molesting by fondling, and Level 6 felony dissemination of material harmful to minors.

[8] On February 11, 2020, the trial court convened Banks' two-day jury trial. Figueroa testified that after Banks moved in with the family, around Christmas of 2017, D.B. began to experience unexplained urinary incontinence. During her testimony, D.B. related acts of anal penetration, fondling, and dissemination of material harmful to minors, but she twice denied that Banks had touched her in any other way. The prosecutor attempted to ask D.B. if she remembered talking to the forensic interviewer. Over Banks' objections to hearsay, improper impeachment, and leading, the trial court allowed the prosecutor to ask D.B. if she remembered telling the forensic interviewer that "Develle did something with his tongue" after which D.B. testified that "he put it on my private part." (Transcript, Vol. I, p. 100). Later and without any objection by Banks, the prosecutor asked D.B. if Banks had "licked her private," and D.B. responded, "Yes." (Tr. Vol. I, pp. 114-15).

[9] Banks testified on his own behalf and related that he had once accidentally exposed himself to D.B. when he walked through the home naked after taking a shower, believing that no one was home. On rebuttal, the detective who interviewed Banks after D.B. disclosed the molestation informed the jury that, during his police interview, Banks had never mentioned this allegedly accidental exposure. The jury found Banks guilty of all the charges against him.

[10] On March 3, 2020, Banks' presentence investigation report was filed. Banks had served in the United States Army from 2003 to 2008. In 2007 he served seven months in the stockade for being AWOL and received an "other than honorable" discharge. (Appellant's App. Vol. II, p. 147). The remainder of Banks' criminal history consisted of 2007 misdemeanor conviction in Illinois for operating while uninsured and a 2018 Class C misdemeanor conviction in Indiana for operating a vehicle while intoxicated. He received a suspended sentence of sixty days, and, on June 7, 2018, his sentence was modified to thirty days in the Allen County Jail, executed.

[11] On March 6, 2020, the trial court held Banks' sentencing hearing. The trial court found as aggravators that Banks had been in a position of trust with his victim and that he had a criminal record. The trial court found the fact that Banks had a great deal of family support to be a mitigating circumstance. The trial court concluded that the aggravators outweighed the mitigators. The trial court sentenced Banks to thirty years for each of his Level 1 felony child molesting convictions, to six years for his Level 4 felony fondling conviction,

and to one year for his Level 6 felony disseminating material harmful to minors conviction. The trial court ordered Banks to serve his thirty-year Level 1 felony sentences consecutively but to serve his other sentences concurrently, for an aggregate sentence of sixty years.

Banks now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Evidence*

### A. *Standards of Review*

Banks challenges the evidence supporting his conviction for child molesting for placing his mouth on D.B.'s sex organ. Banks' challenge is two-fold: He essentially asserts that the trial court abused its discretion in admitting into evidence certain testimony by D.B., without which, he claims there is insufficient evidence to support his conviction. A trial court has wide discretion in ruling on the admissibility of evidence, and we review its rulings only for an abuse of that discretion. *Stinson v. State*, 126 N.E.3d 915, 920 (Ind. Ct. App. 2019). An abuse of discretion occurs when a trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* As to Banks' sufficiency of the evidence argument, our standard of review of such claims is well-established. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is not our role as an appellate court to assess witness credibility or to weigh the evidence. *Id.* We will affirm the conviction unless

no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

### B. *Admission of D.B.'s Testimony*

On direct examination, the prosecutor questioned D.B. as follows:

> Prosecutor: When you talked to the lady in the room, when you went to the place you don't remember the name of, did you tell her that Develle did something with his tongue?"
>
> D.B.: Yes.
>
> Prosecutor: Do you remember what you told her?
>
> D.B.: He put on – he put it on my private part.

(Tr. Vol. I, p. 100). Banks argues that the trial court erred when it "admitted D.B.'s prior out-of-court statement to the forensic interview[er], as a prior inconsistent statement as impeachment evidence." (Appellant's Br. p. 15).

In addressing Banks' argument, we begin by noting that the trial court did not state on the record its rationale for admitting this evidence, so there is no evidence that the trial court admitted it as impeachment evidence. Although Banks characterizes D.B.'s testimony as an out-of-court statement, the fact that D.B. went on to confirm that her "private part" was located below her waist in the front and that the act she had just described happened when the family lived at the Cambridge Square apartments indicates to us that D.B. was testifying about her memory of the offense itself and not what she had reported to the

forensic interviewer. Inasmuch as Banks objected at trial that the prosecutor was leading D.B. on direct examination, our supreme court has held that "[w]hen a child is a witness, it is permissible for the trial court to allow leading questions, given the varying degrees of comprehension of young people." *King v. State*, 508 N.E.2d 1259, 1263 (Ind. 1987). Here, the prosecutor suggested that D.B. may have stated that Banks did something with his tongue but did not suggest what Banks had done. We have upheld the admission of testimony where a child was led to a much greater degree than the prosecutor did in the instant case. *See Riehle v. State*, 823 N.E.2d 287, 294 (Ind. Ct. App. 2005) (upholding the admission of victim's testimony that was prompted by the prosecutor's reminder to victim of what she had said during her deposition), *trans. denied*.

[16] However, even if the trial court had abused its discretion when it admitted the challenged testimony, we would not reverse Banks' conviction. "Evidence that is merely cumulative is not grounds for reversal." *Tobar v. State*, 740 N.E.2d 106, 108 (Ind. 2000). On re-direct examination, the prosecutor asked D.B., "Did [Banks] lick your private?" and D.B. answered in the affirmative. Banks did not object to this testimony. As the challenged testimony was merely cumulative of other, properly-admitted evidence, we could find no reversible error in its admission. *See id*.

## C. *Sufficiency*

[17] Banks' challenge to the sufficiency of the evidence is that, without the challenged testimony, there is no evidence to sustain his conviction for touching

D.B.'s sex organ with his mouth as charged in the Information. This argument fails given that we have concluded that D.B.'s testimony was properly admitted and was merely cumulative of other evidence. The testimony of a child victim alone is sufficient to sustain a conviction for child molesting. *See Heeter v. State*, 661 N.E.2d 612, 616 (Ind. Ct. App. 1996) (finding sufficient evidence to support Heeter's conviction for placing his mouth on the victim's vagina where she testified that he had kissed her "private part" which was the area "between your legs."). We conclude, therefore, that sufficient evidence supported the jury's verdict.

## II. *Inappropriateness of Consecutive Sentences*

[18] Banks contends that the trial court's imposition of consecutive sentences for his Level 1 felony child molesting convictions was inappropriately harsh and requests that we revise his sentences so they will be served concurrently. "Even when a trial court imposes a sentence within its discretion, the Indiana Constitution authorizes independent appellate review and revision of this sentencing decision." *Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019). Thus, we may revise a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. *Id*. The principal role of such review is to attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

## A.  *Nature of the Offenses*

[19]  When reviewing the nature of the offense, we look to the "the details and circumstances of the commission of the offense and the defendant's participation." *Perry v. State*, 78 N.E.3d 1,13 (Ind. Ct. App 2017).  Regarding the nature of his offenses, Banks argues that the nature and circumstances of his offenses "cannot be considered the absolute worst, and are simply the acts necessary to commit the crimes[.]"  (Appellant's Br. p. 17).  We do not find this argument to be persuasive, as we have noted that it is always possible to envision some more despicable offense that renders a defendant's actual crimes less reprehensible by comparison.  *Kovats v. State*, 982 N.E.2d 409, 416 (Ind. Ct. App. 2013).  In addition, Banks was in a position of trust with D.B. as her caretaker, D.B. considered Banks to be her step-father, and Banks committed the offenses when another child, J.G., was present in the home, none of which were elements of any of the offenses Banks committed.

[20]  Banks likens his case to *Walker v. State*, 747 N.E.2d 536, 538 (Ind. 2001), wherein our supreme court ordered Walker's enhanced, consecutive forty-year sentences to be served concurrently where the two convictions were based on identical charges of oral sex on the same six-year-old and there was no physical injury.  However, any comparison to *Walker* is not apt, as Banks received advisory sentences, and the convictions upon which the trial court entered consecutive sentences were for different Level 1 felony acts of molestation.  We find this case to be more akin to *Faith v. State*, 131 N.E.3d 158, 160 (Ind. 2019), wherein our supreme court found this court's revision of Faith's three

consecutive thirty-year sentences for Class A felony child molesting to thirty-year, concurrent terms to be "wholly inadequate," where Faith was in a position of trust with his victim and there was evidence that he committed many more offenses against his victim than those that were reduced to convictions. In short, Banks has failed in his burden to present us with a persuasive rationale based on the nature of his offenses for modifying his consecutive sentences. *See Robinson*, 91 N.E.3d at 577.

### B. *Banks' Character*

[21] Neither do we find that Banks' character militates for revising his consecutive sentences to concurrent ones. Banks' argument on this point is that he only had a minimal criminal record. Banks had a criminal record of serving seven months in the stockade for being AWOL from the Army and misdemeanor convictions for operating while uninsured and operating while intoxicated. Banks had his fully-suspended sentence for operating while intoxicated revoked and executed thirty days in jail. While this is certainly not an extensive criminal record, it does not speak so overwhelmingly of Banks' good character so as to merit a revision of his sentence. In addition, there is evidence in the record that Banks telephoned D.B.'s mother and threatened her after being confronted by Father, an act which is not consistent with a law-abiding character. Accordingly, we decline to revise the trial court's sentence to concurrent terms based on Banks' character.

# CONCLUSION

[22] Based on the foregoing, we conclude that Banks' conviction for child molesting by oral contact with D.B.'s sex organ was sustained by adequate, properly-admitted evidence and that his consecutive sentences are not inappropriate given the nature of his offenses and his character.

[23] Affirmed.

[24] May, J. and Altice, J. concur